**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | | |
|---|---|---|
| Jon Windham, | ) | Civil Action No.:_____  4:24-cv-02192-JD |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| **Carrington Mortgage Services, LLC** | ) | |
| **and WSFS Financial Corporation,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## COMPLAINT

1.    This is an action brought by Plaintiff, Jon Windham, for actual, statutory, and punitive damages, attorneys' fees, and costs for Defendants' violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, (hereinafter "FCRA"), for actual damages, treble damages, and attorneys' fees and costs for Defendants' violations of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §39-5-10, *et seq.,* and for actual and, where available, punitive damages for Defendants' violations of South Carolina common law as set forth herein.

2.    The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3.    Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec. 2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent

consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

4.    To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681c and 1681e, which are two of the cornerstone provisions of the FCRA.

5.    One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

6.    The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as *deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed* (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

## JURISDICTION AND VENUE

7.     This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331, §1332 and §1367.

8.     Venue is proper in the Florence Division because the Plaintiff resides in Florence County and the Defendants transacted business in this division.

## PARTIES

9.     Plaintiff, Jon Windham, is a resident and citizen of the State of South Carolina, Florence County, and is over the age of twenty-one (21) years.  Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10.     Defendant Carrington Mortgage Services, LLC (hereinafter "Carrington") is a Delaware company registered to do business in South Carolina with the South Carolina Secretary of State.  Defendant may be served with process through its registered agent for service of process, C T Corporation System, 2 Office Park Court, Suite 103, Columbia, SC 29223.  At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

11.     Defendant WSFS Financial Corporation (hereinafter "WSFS"), whose corporate status is unknown to Plaintiff, may be served with process by way of its CEO, Rodger Levenson, at its corporate headquarters, 500 Delaware Ave., 10th Floor, Wilmington, DE 19801. Defendant WSFS is the successor by way of merger to Beneficial Financial I, Inc., and at all times and in all respects relevant herein, was doing business in the state of South Carolina and in this division.

12.     Defendants Carrington and WSFS each acted in concert together with the other,

participated in, and contributed to the damages caused to the Plaintiff.

13.     All acts done by Defendant Carrington were done on its own behalf and on the behalf of Defendant WSFS.

14.     Defendant WSFS acted as principal over its agent, Defendant Carrington, and maintained control over all actions taken by Defendant Carrington including all actions to collect improper fees on the Mortgage, to add an escrow account to the Mortgage, to provide inaccurate and/or defamatory information regarding the Plaintiff and Plaintiff's Mortgage at the time the Mortgage was sold and/or transferred, and all reporting done on the Mortgage to the credit reporting agencies and/or third parties.

## FACTUAL ALLEGATIONS

15.     Defendant Carrington was the servicer of Plaintiff's Mortgage on behalf of Defendant WSFS.  Plaintiff's Mortgage was originally opened on June 29, 2002, and ends in account number 3965 ("Mortgage").

16.     On or about May 12, 2014, Defendant WSFS, then operating as Beneficial Financial I, Inc. ("Beneficial"), the alleged holder of the Mortgage, brought a foreclosure action against Plaintiff. *See Beneficial Financial I, Inc., successor by merger to Beneficial Mortgage Co. of South Carolina v. Jon Windham a/k/a Jon D. Windham, et al.*, Florence County, 2014-CP-21-00916.

17.     In response to Defendant WSFS' foreclosure action, Plaintiff filed a counterclaim asserting numerous causes of actions relating to WSFS' malfeasance, including allegations that WSFS violated the South Carolina Unfair Trade Practices Act.

18.     On or about September 8, 2017, the Court entered summary judgment in Plaintiff's

4

favor on his counterclaims, including his claim that Defendant WSFS willfully violated the South Carolina Unfair Trade Practices Act ("SCUTPA").

19.     Thereafter, Defendant WSFS appealed the Order granting summary judgment in Plaintiff's favor to the South Carolina Court of Appeals.

20.     On or about August 5, 2020, the South Carolina Court of Appeals affirmed the Florence County Court's Order granting summary judgment on Plaintiff's claim that Defendant WSFS willfully violated the SCUTPA.  Thereafter the case was returned to the Florence County Court for a trial on Plaintiff's remaining claims and a hearing on damages.

21.     On or about December 13, 2021, Plaintiff and Defendant WSFS entered into a settlement agreement ("Agreement") resolving all claims between the parties including Defendant WSFS' foreclosure action and Plaintiff's claim for damages due to WSFS' willful violations of the SCUPTA. This Agreement included covenants that the revised balance due on the mortgage was $150,000, that WSFS would not issue a 1099-C on any alleged waiver of indebtedness as the validity of the debt was disputed by Plaintiff as it included the illegal fees and charges added by WSFS, and that neither WSFS, nor any servicer servicing this loan, at the time or at any time in the future, would report the tradeline related to the Mortgage to any credit reporting agency. Defendant WSFS further specifically agreed that the provisions of the Agreement were to be binding on any of WSFS' successors and/or assigns.

22.     On or about December 13, 2021, the Final Loan Modification Agreement was sent by Federal Express to Defendant Carrington, together with a cashiers' check in the amount of $1,457.09, reflecting the new Mortgage payment beginning December 1, 2021.

Defendant Carrington received the package on December 15, 2021.

23.    On or about December 15, 2021, Defendant Carrington sent Plaintiff a letter requesting Plaintiff to ensure the accuracy of his contact information on file with Carrington's records.  The address Defendant Carrington had listed as Plaintiff's primary mailing address was that of his attorney's office.   An information form was included for Plaintiff to make the necessary changes and return to Defendant Carrington.  Plaintiff updated the primary mailing address to his home address and mailed the form back to Defendant Carrington.

24.    On or about December 22, 2021, Plaintiff mailed Defendant Carrington, via certified mail, a cashier's check in the amount of $1,457.09 reflecting the Mortgage payment due by December 29, 2021.

25.    On or about January 5, 2022, Plaintiff received an email from Kenneth Beasley, Specialist, Special Servicing Department, for Defendant Carrington.  Plaintiff had no understanding as to the meaning of the email and there was no explanation provided by Beasley. The email stated:

> "12/17/21 00208 PDC NT QC FAIL: BWR altered terms/agreement on p.1 of 6 of LMA. Original docs issued reflect an LMA dated 11/16/21 vs BWR's initialed page now reflecting 11/30/2021. Please advise BWR 12/17/21 00208 PDC NT he may not alter/change document and have him re-sign if he wishes to proceed with original docs."

26.    On or about January 7, 2022, Defendant Carrington mailed Plaintiff's Mortgage statement to Plaintiff's attorney's office.  The statement included a Delinquency Notice stating Plaintiff was delinquent on his Mortgage payments, and that the amount due by

January 29, 2022, was $237,607.90, which was completely incorrect.

27.     At the time Defendant Carrington sent this Mortgage statement to Plaintiff, Defendant Carrington, by and through its principal Defendant WSFS, knew or should have known that Plaintiff's Mortgage was not delinquent and that the only payment due was the regular monthly mortgage payment of $1,457.09, which was the amount specifically set by the terms of the Agreement.

28.     On January 10, 2022, Plaintiff printed an escrow summary wherein Defendant Carrington was charging Plaintiff for homeowner's insurance to pay State Farm.  However, Plaintiff's Mortgage did not have an escrow account as Plaintiff paid his homeowner's insurance directly.  Additionally, as part of the Agreement, Defendants specifically agreed the Mortgage would not have an escrow account.

29.     At the time Defendant Carrington added the escrow account to Plaintiff's Mortgage, Defendant Carrington, by and through its principal Defendant WSFS, knew or should have known that Plaintiff's Mortgage did not have an escrow account as same was specifically precluded by the terms of the Agreement.

30.     On January 12, 2022, Plaintiff's counsel forwarded Defendant WSFS' counsel copies of the email and escrow summary requesting she have her client correct the matters so Defendants would no longer be in violation of the Agreement.

31.     On January 21, 2022, Defendant WSFS' counsel emailed Plaintiff's counsel stating the issues had been corrected by Defendants and that Plaintiff's Mortgage was now correctly showing as current with the next payment due on February 1, 2022.

32.     On or about January 24, 2022, Plaintiff received loan modification documentation

to complete and return prior to "11/30/21." The documents were riddled with incorrect information. Specifically, the documents had an incorrect principal balance, required escrow payments, and contained terms that had previously been specifically removed by agreement.

33.    On or about January 27, 2022, Plaintiff received a true and certified copy of the fully executed Loan Modification Documents from Defendant Carrington on behalf of Defendant WSFS.

34.    On or about February 1, 2022, Defendant Carrington mailed Plaintiff's monthly Mortgage statement to Plaintiff's attorney's office, rather than Plaintiff's home address. The statement reflected the correct monthly payment amount of $1,457.09 due by March 1, 2022, and no longer contained any incorrect overdue payments or fees due. Additionally, the incorrect Delinquency Notice appearing on previous statements had finally been removed by Defendants.

35.    On or about February 22, 2022, Defendant Carrington sent Plaintiff an Annual Escrow Disclosure Statement by way of his attorney's office showing that Defendants had again wrongfully added an escrow account to Plaintiff's Mortgage.

36.    Defendant Carrington sent the Annual Escrow Disclosure Statement on behalf of and at the instruction of Defendant WSFS.

37.    At the time the escrow statement was forwarded to Plaintiff, both Defendants knew or should have known that Plaintiff's Mortgage did not have an escrow account and that the addition of an escrow account was a direct breach of the Agreement entered by the parties.

38.     On or about March 1, 2022, Plaintiff received his March Mortgage statement. The mailing address for Plaintiff had finally been corrected to his home address. However, this statement was once again reflecting the improper addition of fees in the amount of $252.02.

39.     Defendant Carrington sent the March Mortgage statement on behalf of and at the instruction of Defendant WSFS.

40.     At the time the March Mortgage statement was sent to Plaintiff, both Defendants knew or should have known that Plaintiff did not owe the attorney and filing fees as same were added months after the underlying cases were settled and the Agreement was executed. Both Defendants knew or should have known that the addition of these improper fees was a direct breach of the Agreement entered by the parties.

41.     On or about March 10, 2022, Plaintiff faxed and mailed, by certified mail, a written dispute letter to Defendant Carrington **("First Carrington Dispute")**.  In his letter, Plaintiff stated he had received an Annual Escrow Account Disclosure Statement which showed his Mortgage payment was going to increase because of the payment of county taxes.  Plaintiff informed Defendant Carrington his Mortgage did not have an escrow account and that he paid his homeowner's insurance and taxes separately.  Plaintiff requested Defendant Carrington immediately remove all escrow from his Mortgage and send him a revised statement showing his monthly payment would remain the same at $1,457.09.  Plaintiff also provided his home address and requested Defendant Carrington update its records to reflect his correct mailing address.

42.     On or about March 23, 2022, Defendant Carrington sent Plaintiff an email confirming he authorized a Mortgage payment in the amount of $1,457.09 on March 23,

2022.

43.    On or about March 24, 2022, Plaintiff faxed and mailed, via certified mail, a second written dispute letter to Defendant Carrington **("Second Carrington Dispute")**.  In this letter, Plaintiff stated he had received an Annual Escrow Account Disclosure Statement, which showed his Mortgage payment was going to increase because of the payment of county taxes.  Plaintiff again informed Defendant Carrington that his Mortgage did not have an escrow account.  Plaintiff also stated he had received the Mortgage statement on or about March 23, 2022, for the April payment and it showed the addition of the escrow amount, as well as charges of $250 for "Attorney Fees Billed" and $2.02 for "Filing Fees Billed," which Plaintiff did not owe.  Plaintiff informed Defendant Carrington that despite the errors, he made the correct April payment of $1,457.09 and instructed Defendant Carrington to remove the escrow account from his Mortgage and to also remove the wrongfully added attorney and filing fees immediately.

44.    On or about April 1, 2022, Plaintiff received a mortgage statement from Defendant Carrington which now showed the $252.02 fees as an "Overdue Payment" charge, increasing his monthly Mortgage payment to $1,709.11.

45.    Defendant Carrington sent the April Mortgage statement on behalf of and at the instruction of Defendant WSFS.

46.    At the time the April Mortgage statement was sent to Plaintiff, both Defendants knew or should have known that Plaintiff did not owe the attorney and filing fees as same were added months after the underlying cases were settled and the Agreement was executed. Both Defendants knew or should have known that the addition of these improper fees was

a direct breach of the Agreement entered by the parties.

47.     At the time the April Mortgage statement was forwarded to Plaintiff, both Defendants knew or should have known that Plaintiff's Mortgage did not have an escrow account and that the addition of an escrow account was a direct breach of the Agreement entered by the parties.

48.     On or about April 14, 2022, Plaintiff received a letter from Carrington stating they had received his inquiry, were currently researching the issue(s) in said inquiry, and to anticipate a response on or before May 26, 2022.

49.     On or about April 15, 2022, Plaintiff faxed and mailed via certified mail, a third written dispute letter to Defendant Carrington ("**Third Carrington Dispute**").  In his letter, Plaintiff stated he had received the Mortgage statement for May, and it did show the escrow amount was removed.  However, the statement was showing a past due amount of $252.02, with $250 for "Attorney Fees Billed" and $2.02 for "Filing Fees Billed."  Plaintiff stated he did not owe any attorney fees or filing fees, and thereby would be making the correct payment in the amount for $1,457.09.  Plaintiff requested the wrongfully added fees be removed.

50.     On or about April 21, 2022, Defendant Carrington, on behalf of itself and its principal, Defendant WSFS, finally sent Plaintiff a letter in response to his written inquires received by Defendant Carrington on March 10, 2022, March 14, 2022, March 25, 2022, and April 14, 2022.  Defendant Carrington, for itself and on behalf of its principal, Defendant WSFS, acknowledged the wrongful addition of the escrow account, which it removed.  With respect to the addition of the wrongful $252.02 in fees, Defendant

Carrington, for itself and on behalf of its principal, Defendant WSFS, stated the fees were for a $250.00 Foreclosure Fee and a $2.02 filing fee incurred on February 17, 2022. Defendants expressly refused to remove the fees and stated the fees would be included on all billing statements until such fees were paid.

51.    At the time Defendants refused to remove the fees, both Defendants knew or should have known that the underlying cases were fully settled and dismissed on December 14, 2021.  Accordingly, those fees, which were added months later, were not due by Plaintiff as the Mortgage was no longer in foreclosure.

52.    Beginning with the March 2022 Mortgage statement and continuing through at least the October 2022 Mortgage statement, each and every monthly statement showed an "Overdue Payment" fee of $252.02 due, making the monthly payment due $1,709.00, rather than the correct monthly payment of $1,457.09.

53.    Each and every monthly Mortgage statement sent by Defendant Carrington was sent at the direct instruction of and on behalf of Defendant WSFS.

54.    On July 15, 2022, Plaintiff's counsel again contacted Defendants' counsel regarding the Defendants' wrongful addition of the foreclosure fees and requested Defendants correct this error.  Plaintiff's counsel contacted Defendants' counsel four more times between August 2, 2022, and October 12, 2022, regarding the ongoing error.  Plaintiff's counsel also specifically informed Defendants' counsel that the loan was being transferred and the error needed to be corrected before that time to prevent further harm to Plaintiff.

55.    Defendants completely failed to remove the wrongfully added attorney fees and filing fees from Plaintiff's Mortgage.

56.    On or about September 29, 2022, Plaintiff received a notice from FLA Mortgage Capital 3 LLC, that ownership of his Mortgage was transferred to them on August 31, 2022, and that Plaintiff's monthly mortgage payments should be directed to the loan servicer, Planet Home Lending.

57.    On or about October 19, 2022, Plaintiff's Mortgage was transferred to Planet Home Lending, Mortgage Loan No. 2000026409 for servicing.

58.    At the time Plaintiff's Mortgage was transferred and/or sold by Defendants, Defendants included the $252.02 in fees as due and owing on the Mortgage.

59.    On or about November 2, 2022, Plaintiff received a Mortgage statement from Planet Home Lending, with a total amount due of $3,166.20.  Included in the total amount due were the improper $252.02 in fees and charges, and an incorrect overdue payment of $1,457.09.

60.    On or about November 3, 2022, Plaintiff received another Mortgage statement from Planet Home Lending, which again included the incorrect and wrongful fees of $252.02.

61.    In January 2023, in direct violation of the Agreement, Plaintiff received a 1099-C from Defendant Carrington in which Defendant Carrington reported to the IRS that $228,209.12 in Mortgage debt had been written off.  Defendant Carrington sent the 1099-C to Plaintiff on behalf of Defendant WSFS, and with the direct approval and knowledge of Defendant WSFS.

62.    On or about March 1, 2023, Plaintiff sent Planet Home Lending a letter wherein Plaintiff stated that Defendants had sold and/or transferred his Mortgage to Planet Home Lending with incorrect information on the account.  Specifically, Plaintiff stated he did not

owe the illegally added fees of $252.02, and that Planet Home Lending's ongoing efforts to collect that amount was improper.  Plaintiff instructed Planet Home Lending to remove the illegal fees immediately.

63.    On or about March 1, 2023, Plaintiff sent Defendant Carrington a letter **("Fourth Carrington Dispute")** stating that the $252.02 added for attorney fees and filing fees was not correct and was in direct violation of the Agreement.  Plaintiff enclosed a copy of the Agreement with his letter and requested Defendant Carrington correct the issue with Planet Home Lending since Defendants sold and/or transferred the Mortgage with incorrect, defamatory information.  Finally, Plaintiff demanded that Defendant Carrington rescind the 1099-C filed with the IRS as same was issued in direct violation of the terms of the Agreement.

64.    Neither Defendant Carrington nor Defendant WSFS ever responded to Plaintiff's letter.

65.    On or about April 13, 2023, Plaintiff sought a loan from South State Bank. South State Bank pulled Plaintiff's Equifax credit report and denied Plaintiff's loan request due to multiple payments being reported as 180-days late by Defendant Carrington on Plaintiff's Equifax credit report.

66.    Defendant Carrington reports mortgage accounts to the credit reporting agencies on behalf of itself and its principal, Defendant WSFS.  Defendant WSFS exercises and maintains control over all its mortgages reported by Defendant Carrington, when said mortgages are reported, the information reported on the mortgages, and how any disputes received on a specific mortgage are investigated.

14

67.    On or about April 20, 2023, Plaintiff requested and received a copy of his Equifax credit report. Defendants were not only violating the Agreement by reporting the Mortgage to Equifax, but Defendants were also inaccurately reporting the Mortgage as having been 180-days past due from March, 2021 to September, 2021. This was the only negative tradeline reporting on Plaintiff's Equifax credit report.

68.    On or about April 21, 2023, Plaintiff sent a dispute letter to Equifax (**"First Equifax Dispute"**) disputing the reporting of the Mortgage as 180-days past due. With the First Dispute, Plaintiff provided Equifax with his name, address, date of birth, and Social Security number.  Equifax received Plaintiff's First Dispute on April 24, 2023 and thereafter forwarded Plaintiff's dispute to Defendant Carrington.

69.    Thereafter, on or about April 21, 2023, Plaintiff sent a written dispute letter to Experian **("First Experian Dispute")**. In his letter, Plaintiff stated he had requested a copy of his Experian credit report twice before and Experian had failed to provide him a copy both times.  Plaintiff informed Experian that his Mortgage, account ending 3965, was reporting as 180-days past due for seven months, which was incorrect.  Plaintiff informed Experian the Mortgage should not be reporting at all as it was resolved in litigation and Defendant Carrington was expressly precluded from reporting the Mortgage.  Additionally, Plaintiff stated the Mortgage was not 180-days past due. Plaintiff requested Experian remove the inaccurate Mortgage and send him a complete copy of his credit report.

70.    Experian received Plaintiff's dispute on April 24, 2023, and thereafter forwarded Plaintiff's dispute to Defendant Carrington.

71.    On or about April 24, 2023, Plaintiff received a response from Planet Home Lending

in response to his March 13, 2023, letter. In its letter, Planet Home Lending stated the $252.02 fees "were assessed to the Loan by Carrington on February 17, 2022, as a result of a foreclosure action. The fees are an Attorney Foreclosure fee and the foreclosure filing fee."

72.    On or about May 3, 2023, Plaintiff received a letter from South State Bank stating the principal reason his loan application was denied was due to "delinquent past or present credit obligations with others" based on a credit report obtained from Equifax.

73.    The only delinquent account reporting on Plaintiff's Equifax credit report was the Mortgage being reported by Defendants.

74.    On or about May 15, 2023, in response to Plaintiff's First Equifax Dispute, Equifax sent Plaintiff the results of its reinvestigation showing that Defendant Carrington continued to report the Mortgage account as "Acct Transferred or Sold" and verified the delinquent payment history as accurate. Accordingly, Defendant Carrington, on behalf of Defendant WSFS, continued to report the Mortgage payment history for March 2021, April 2021, May 2021, June 2021, July 2021, August 2021, and September 2021 as 180-days or more past due.

75.    On or about May 18, 2023, Plaintiff received an email from Headway Capital denying Plaintiff's application for credit on the terms he requested based on an "inadequate personal Transunion Vantage score."

76.    On or about May 25, 2023, Plaintiff sent a second written dispute letter to Equifax **("Second Equifax Dispute")**. Plaintiff again stated his Mortgage payments were never past due. Plaintiff also included a copy of the Court judgment entered in his favor

concerning the Mortgage.  Finally, Plaintiff stated he had been denied credit because of the inaccurate information being reported by Defendant Carrington on his credit and requested the Mortgage account be deleted immediately.

77.    Equifax received Plaintiff's Second Dispute on or about May 29, 2023, and thereafter forwarded same to Defendant Carrington.

78.    On or about May 25, 2023, Plaintiff sent a second written dispute to Experian **("Second Experian Dispute")**.  In his letter, Plaintiff stated he had still not received a copy of his Experian credit report, and that he had been denied a loan because of a mortgage account reporting incorrect information. Specifically, Plaintiff informed Experian that the Mortgage Account ending 3965, which was reporting 180-days late, should not be reporting at all because it was resolved in litigation.  Plaintiff requested Experian remove the inaccurate account immediately and forward him a complete copy of his credit report.

79.    Experian received Plaintiff's dispute on May 31, 2023, and thereafter forwarded same to Defendant Carrington.

80.    On or about June 8, 2023, Plaintiff received Experian's dispute results online which showed that there were no potentially negative credit items currently appearing on his Experian credit report.

81.    On or about June 22, 2023, Equifax sent Plaintiff the results of its reinvestigation of Plaintiff's second dispute wherein Equifax stated that Defendant Carrington had again verified the account payment history as accurate.  As a result, the Mortgage account reported by Defendant Carrington, on behalf of Defendant WSFS, continued to be reported as 180-days late for March 2021 through September 2021.

17

82.    Despite actual knowledge of all of the foregoing facts and specific reference to the parties' Agreement, Defendants verified the prior false reporting of the Mortgage as true to Equifax and to date, Defendant Carrington, on behalf of Defendant WSFS, continues to report inaccurate information regarding the Mortgage account on Plaintiff's Equifax credit report including that Plaintiff's Mortgage payments were 180-days late for seven months.

83.    Since Plaintiff first began disputing the inaccurate reporting of his Mortgage by Defendants, Raceway Ford, South State Bank and Capital One Bank have all done hard inquiries of Plaintiff's Equifax credit report for purposes of granting Plaintiff credit.

84.    Due to Defendants' actions and ongoing breach of the Agreement, Plaintiff has suffered and continues to suffer harm to his credit and personal reputations.  Plaintiff has been denied credit, has endured ongoing efforts by Defendants to collect improper escrow amounts, continues to be billed by Planet Home Mortgage for improper fees that Plaintiff does not owe, and has suffered lost sleep, worry, frustration, physical sickness including headaches, and loss of enjoyment of life for which he seeks damages.

## <u>COUNT ONE</u>
### (Fair Credit Reporting Act)

85.    The Plaintiff adopts the averments and allegations of paragraphs 15 through 84 hereinbefore as if fully set forth herein.

86.    The FCRA was created to protect consumers from the transmission of inaccurate information about them.  *Guimond v. Trans Union Credit Information Co., 45 F.3d 1329, 1333 (9th Cir. 1995).*

87.    As the principal, Defendant WSFS controls all aspects of its agent's, Defendant

Carrington's, conduct in investigating disputes and reporting Defendant WSFS' accounts to the credit reporting agencies.  Therefore, Defendant WSFS has vicarious liability for all of Defendant Carrington's FCRA violations.

88.    Defendants violated 15 U.S.C. §1681s-2(b) by failing to investigate the accuracy of the information reported by Defendants to the consumer reporting agencies.

89.    On at least one occasion within the past two years, by example only and without limitation, Defendants violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to fully and properly investigate after receiving notice that the Plaintiff disputed the information said Defendants had provided to a consumer reporting agency.

90.    On at least one occasion within the past two years, by example only and without limitation, Defendants violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies.

91.    As a result of Defendants' violations of 15 U.S.C. §1681s-2(b)(1)(A) and (B), Plaintiff suffered actual damages, including but not limited to: damage to reputation and credit reputation, lost credit opportunities, credit denials, embarrassment, humiliation, frustration, anxiety, loss of sleep, worry, physical sickness and pain, and mental anguish.

92.    The law in this District, the Fourth Circuit, and even nationally has long ago been articulated to require a detailed and searching investigation by a furnisher when it receives a consumer's FCRA dispute through a consumer reporting agency.

93.    The violations by Defendants were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.  In the alternative, Defendants were negligent, entitling the Plaintiff to recovery under 15 U.S.C.

§1681o.

94.     Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorneys' fees from Defendants in an amount to be determined by a jury pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT TWO
### (Fair Credit Reporting Act)

95.     The Plaintiff adopts the averments and allegations of paragraphs 15 through 94 hereinbefore as if fully set forth herein.

96.     As the principal, Defendant WSFS controls all aspects of its agent's, Defendant Carrington's, conduct in investigating disputes and reporting Defendant WSFS' accounts to the credit reporting agencies.  Therefore, Defendant WSFS has vicarious liability for all of Defendant Carrington's FCRA violations.

97.     On one or more occasions within the past two years, by example only and without limitation, Defendants violated 15 U.S.C. §1681s-2(b)(1)(C) and (D) by publishing Defendants' inaccuracies within Plaintiff's credit files with the credit reporting agencies by failing to correctly report results of an accurate investigation to each credit reporting agency.

98.     Defendants violated 15 U.S.C. §1681s-2(b)(1)(C) by reporting inaccurate, incomplete, false, and misleading results of the investigation, if any, to at least one consumer reporting agency.

99.     Defendants violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to notify all consumer reporting agencies that the reporting of the Mortgage the subject of this action was

inaccurate, incomplete, false, and misleading.

100.    As a result of Defendants' violations of 15 U.S.C. §1681s-2(b)(1)(C) and (D), the Plaintiff suffered actual damages, including but not limited to: damage to his credit and credit reputation, lost credit opportunities, credit denials, and incurred out of pocket losses. Additionally, Plaintiff suffered humiliation, anxiety, loss of sleep, frustration, worry, physical sickness and pain, and mental anguish, as well as damages for attorneys' fees.

101.    The violations by Defendants were willful, rendering them liable for punitive damages in an amount to be determined by the jury pursuant to 15 U.S.C. §1681n.  In the alternative, Defendants were negligent, entitling the Plaintiff to recovery under 15 U.S.C. §1681o.

102.    The Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorneys' fees, pursuant to 15 U.S.C. §1681n and §1681o.

## <u>COUNT THREE</u>
### (Defamation, Libel and Slander)

103.    The Plaintiff adopts the averments and allegations of paragraphs 15 through 102 hereinbefore as if fully set forth herein.

104.    Defendants willfully, wantonly, recklessly and/or maliciously published and communicated false and defamatory statements regarding Plaintiff to third parties and the public at large.  Said statements harmed Plaintiff's reputation and caused Plaintiff physical sickness, mental anguish and emotional distress.

105.    Said communications were false in that Plaintiff did not owe the $252.02 in fees to Defendants.  Additionally, Plaintiff's payment history on the Mortgage was not past due

180-days or more for seven (7) months.

106.    Said false and defamatory statements have harmed the reputation of Plaintiff and/or deterred third persons from associating with Plaintiff.  Specifically, Defendants reported the Mortgage to the national credit reporting agencies as belonging to Plaintiff so the Mortgage would appear as a derogatory account on Plaintiff's credit reports.  Plaintiff's credit reports were viewed by numerous third parties as set out above and Plaintiff was denied credit.

107.    Defendants communicated to third parties and the public at large false information concerning Plaintiff, disseminating and imputing false and misleading credit worthiness information concerning Plaintiff, including, but not limited to, reporting that Plaintiff's payments on the Mortgage were delinquent and he owed $252.02 in outstanding fees.

108.    At the time said communications were made, Defendants knew or should have known the falsity of the communications or recklessly disregarded the potential inaccuracy of the information, yet knowingly, willfully and maliciously communicated the falsity.

109.    As a result of Defendants' intentional communications to third parties of the false information, Plaintiff was caused to suffer injury to his reputation in the eyes of his community and the public at large, and was forced to endure credit reporting of the Mortgage in spite of the fact that the Agreement precluded Defendants from reporting the Mortgage, Plaintiff's Mortgage was not 180-days past due, and Plaintiff did not owe the fees.

110.    As a proximate consequence of said defamation, libel and slander, Plaintiff was caused to have negative credit reports, to be held up to public ridicule or shame, to be

denied credit, and made to suffer humiliation, anxiety, loss of sleep, anger, worry, physical sickness, loss of enjoyment of life, and mental anguish for which he claims compensatory and punitive damages.

## COUNT FOUR
**(Breach of Contract)**

111.    The Plaintiff adopts the averments and allegations of paragraphs 15 through 110 hereinbefore as if fully set forth herein.

112.    An express contract existed between Defendants and Plaintiff.

113.    The contract has been performed by Plaintiff as required.

114.    Defendants have repeatedly violated the terms of the contact and have refused to perform without legal excuse.

115.    The actions of Defendants constitute a breach of the aforementioned contract.

116.    As a consequence of Defendants' breach of contract, Plaintiff has suffered injuries that may be recovered by way of a judgment for the recovery of contract damages against Defendants.

## COUNT FIVE
**(Breach of Implied Duty of Good Faith)**

117.    The Plaintiff adopts the averments and allegations of paragraphs 15 through 116 hereinbefore as if fully set forth herein.

118.    Plaintiff would show that implied in the parties' Agreement was a covenant of good faith and fair dealing.

119.    In violation of that covenant, Defendants failed to honor the promises contained in the Agreement.

120.  As a direct and proximate result of Defendants' conduct, Plaintiff suffered substantial damages.

121.  Judgment should be granted to Plaintiff for actual and punitive damages, together with attorneys' fees and costs, in an amount to be determined by the trier of fact.

## COUNT SIX
### (Breach of Contract Accompanied by a Fraudulent Act – Defendant WSFS)

122.  The Plaintiff adopts the averments and allegations of paragraphs 15 through 121 hereinbefore as if fully set forth herein.

123.  As set forth above, Defendant WSFS breached the Agreement.

124.  Said breach was done with fraudulent intent. Defendant WSFS was aware that it did not have the authority to prevent its successors or assigns from reporting the Mortgage to Plaintiff's credit reports at the time the Agreement was consummated.

125.  Said breach was accompanied by a fraudulent act. Despite full knowledge that it would not be able to control the actions of its successor and/or assigns, Defendant WSFS induced Plaintiff into entering the Agreement and satisfying the judgment he obtained against Defendant WSFS by misleading Plaintiff into believing that it would be able to prevent its successors and/or assigns from violating the Agreement.

126.  Due to the actions of Defendant WSFS, Plaintiff is entitled to an award of actual and punitive damages to be determined by the trier of fact.

## COUNT SEVEN
### (South Carolina Unfair Trade Practices Act)

127.  The Plaintiff adopts the averments and allegations of paragraphs 15 through 126 hereinbefore as if fully set forth herein.

128.    The activities of Defendants constitute "trade or commerce" as defined by the South Carolina Unfair Trade Practices act, S.C. Code Ann. §39-5-10, *et seq.*

129.    The actions of Defendants described above constitute unfair and deceptive acts and practices in conduct of trade and commerce, as prohibited by the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §39-5-10, *et seq.*, and are willful violations thereof.

130.    The actions of Defendants have a real and substantial potential for repetition and affect the public interest.

131.    Plaintiff has suffered an ascertainable loss due to the unlawful actions of Defendants, entitling Plaintiff to recover actual damages in an amount to be proven at trial, treble of said actual damages, and an award of attorneys' fees and costs.

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A.    Actual and statutory damages from Defendants pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B.    Punitive damages from Defendants pursuant to 15 U.S.C. §1681n(a)(2);

C.    Costs and reasonable attorneys' fees from Defendants pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2);

D.    Actual damages and attorneys' fees and costs due to Defendants' violations of the South Carolina Unfair Trade Practices Act;

E.    Treble damages for Defendants' willful violations of the South Carolina Unfair Trade Practices Act;

F.    Actual and punitive damages, where available, and attorneys' fees and costs, where

available, for Defendants' violations of South Carolina common law; and

G.    For such other and further relief as the Court may deem just and proper.


_/s/ Penny Hays Cauley_
Penny Hays Cauley, Fed.  ID No.  10323
Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com


**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

_/s/ Penny Hays Cauley_
Of Counsel

**DEFENDANTS TO BE SERVED VIA CERTIFIED MAIL:**
Carrington Mortgage Services, LLC
c/o C T Corporation System – Registered Agent
2 Office Park Ct., Suite 103
Columbia, SC 29223

WSFS Financial Corporation
c/o Rodger Levenson, CEO
500 Delaware Ave., 10th Floor
Wilmington, DE 19801
(Restricted Delivery)